The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jan Pittman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The plaintiff was the employee of defendant Methodist College during all times in question, and that the carrier on the risk for defendant-employer was Liberty Mutual Insurance Company.
2. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the provisions of the North Carolina Workers' Compensation Act. The employee-employer relationship existed between employee and employer on August 17, 1988.
3. Plaintiff was struck in the head and neck with a backhoe on August 17, 1988 and sustained an injury by accident.
4. Plaintiff's average weekly wage on or about August 17, 1988 was $176.75 resulting in a compensation rate of $117.84.
5. Plaintiff missed work on the following dates as a result of said injury by accident: August 17-19, 1988; May 30, 1990; and June 16, 1990 through August 5, 1990.
6. Plaintiff returned to work after his cervical surgery on August 6, 1990 and worked from that date until February 19, 1992 for defendant-employer as a mechanic.
7. Plaintiff's last day of work with defendant-employer was February 19, 1992.
8. The parties stipulated to the transcript of the prior hearing on March 2, 1994 before Deputy Commissioner Tamara R. Nance.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 58 year old male with a high school education who has attended several courses at the community college level. Plaintiff has experience and/or training as a mechanic, plumber, welder and electrician. As of June 16, 1988, plaintiff was employed by defendant-employer as a college mechanic in the maintenance department.
2. Plaintiff sustained an admittedly compensable injury to his cervical spine on August 17, 1988 when plaintiff was struck in the face and neck by a backhoe. Plaintiff was out of work for two days after this incident and then returned to full time work performing his normal job duties. Plaintiff received conservative treatment from several physicians during the following months, and was ultimately referred to Dr. Wilkins, a neurosurgeon, at Duke University Medical Center, by his family physician Dr. Hardison.
3. Plaintiff was initially examined by Dr. Wilkins on May 30, 1990 for complaints of pain in his neck and right arm. Dr. Wilkins conducted additional tests and he diagnosed plaintiff as having sustained a herniated disc at the C5-6 level and subsequently Dr. Wilkins performed a partial hemilaminectomy and diskectomy on plaintiff on June 19, 1990. Plaintiff was authorized to remain out of work as a result of said surgery until August 6, 1990, when plaintiff was released to return to work by Dr. Wilkins without any restrictions. As of August 6, 1990, plaintiff had reached maximum medical improvement as a result of said injury and was rated as having a five percent permanent partial disability to his back as a result of the cervical surgery which was causally related to plaintiff's injury.
4. Following his return to work on August 6, 1990, plaintiff was capable of performing his assigned job duties without any problems and plaintiff made no additional complaints of physical problems which prevented him from performing his normal job duties nor did plaintiff seek any additional medical treatment for problems associated with his cervical injury other than on one occasion on May 28, 1991, when plaintiff sought medical treatment from Dr. Hardison for complaints of neck pain and ear pain following an alleged incident at work involving a different insurance carrier and plaintiff alleged that a horn had blown in his ear. Diagnosis was ear infection and as regards plaintiff's complaints of neck pain, plaintiff was not referred to Dr. Wilkins for additional evaluation as this was treated as an acute onset of neck pain following the alleged incident of May 28, 1991.
5. It was not until January 8, 1992 that plaintiff returned to see Dr. Wilkins for further treatment complaining of weakness and increased pain in his neck and right limbs which plaintiff attributed to doing a lot of hammering in the course of his employment, a high pitched noise in his right ear and a vibrating sense in his low back. Plaintiff exhibited a lack of effort during examination and Dr. Wilkins testified that hammering should not aggravate plaintiff's prior cervical condition. At this time, plaintiff's examination was essentially the same as in August 1990 and Dr. Wilkins had no explanation for plaintiff's complaints of increased symptoms and could not causally relate plaintiff's new complaints to the injury of August 17, 1988. Dr. Wilkins referred plaintiff to a doctor for follow-up regarding his ear problem and to Dr. Tourian, a neurologist, for evaluation of plaintiff's complaints of pain.
6. As regards plaintiff's work capacity, plaintiff continued to work at his mechanic position through February 13, 1992. However, during the Spring of 1991, plaintiff had begun having personnel problems with other co-workers. Plaintiff was verbally abusive to his co-workers and complained that his co-workers were "sabotaging his work." Plaintiff was counseled and finally given a formal reprimand for this conduct. No further reprimands were given plaintiff until February 13, 1992 when plaintiff was asked to manually check the tightness of lug nuts on college vehicles. Plaintiff was not asked to tighten the lug nuts but merely to "check" them. Plaintiff refused to check these lug nuts. As it would be a safety hazard to allow the vehicles to be sent out on the road without having the lug nuts checked, as a result of plaintiff's insubordination in refusing to tighten the lug nuts, plaintiff was transferred out of his position as a college mechanic and was to be reassigned to the plumbing and lighting section or any other position deemed appropriate by the superintendent of Buildings and Grounds. At this meeting when plaintiff was informed that he was to be transferred, plaintiff stated to Mr. Clayton, the President of Business Affairs, something to the effect that he thought his back would be hurting the next day and that he wouldn't be able to come into work. In fact, plaintiff never did return to work after being reassigned and never attempted to perform any other position with defendant-employer. Instead, plaintiff called defendant-employer on a daily basis, thereafter, reporting that he would not be in for work.
7. Plaintiff was seen by Dr. Tourian on March 2, 1992. Dr. Tourian noted that plaintiff exhibited extremely histrionic behavior and that plaintiff acted in a bizarre manner. Dr. Tourian testified that the portion of the nervous system involved with the expressions of "acute pain" wears out when the pain becomes "chronic" and, therefore, it is extremely unusual for a person alleging pain of a chronic nature, as plaintiff is, to exhibit facial expressions and bodily movements indicative of pain. Dr. Tourian also noted that plaintiff's distribution of pain did not fit into any well-known anatomical pattern. On a diagram plaintiff was asked to complete regarding his complaints of pain, plaintiff described abdominal rather than back pain. It was Dr. Tourian's opinion that plaintiff was upset about the transfer from his mechanic's job. However, Dr. Tourian testified that he believed plaintiff's real problem was that his mother had died approximately two years previously, that plaintiff was very close to his mother having lived with her even after his marriage and that plaintiff was still experiencing unresolved grief over that loss. Dr. Tourian was unable to give a medical opinion as to the probable cause of plaintiff's complaints of pain.
8. Plaintiff was referred to Dr. Derian, an orthopedic surgeon, on March 27, 1995 for a second opinion. Dr. Derian diagnosed plaintiff as having multi-level degenerative disc disease. Again, as during the January 19, 1992 examination with Dr. Wilkins, Dr. Derian noted that plaintiff exhibited poor effort and symptom magnification during examination. Furthermore, plaintiff related an inaccurate history to Dr. Derian in that plaintiff related that he had not returned to work since the injury of August 17, 1988. During this evaluation, plaintiff was mainly complaining of low back pain and not problems with the cervical area of his back. Dr. Derian assigned plaintiff a twenty-five percent permanent partial disability to his back as a result of plaintiff's alleged low back symptoms. Dr. Derian did not assign any rating to plaintiff's back as a result of plaintiff's cervical back condition in addition to the five percent previously assessed by Dr. Wilkins. Dr. Derian, as did Dr. Wilkins, did not feel that plaintiff's cervical back condition was disabling. Dr. Derian was unable to give an opinion to a reasonable degree of medical certainty that plaintiff's problems and symptoms at the time of his examination were causally related to the injury plaintiff sustained on August 17, 1988.
9. A review of all the medical evidence of record in this matter fails to establish that plaintiff has sustained a change in his cervical back condition which resulted from the admittedly compensable injury giving rise to this claim nor does said evidence establish a causal connection between the lower back condition symptoms which plaintiff now contends to be the cause of his disability and plaintiff's admittedly compensable injury of August 17, 1988.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the injury by accident plaintiff sustained to his cervical spine on August 17, 1988, plaintiff was temporarily and totally disabled for the period August 17-19, 1988; May 30, 1990; and June 18 through August 6, 1990 and is entitled to temporary total disability compensation benefits at the rate of $117.84 per week for that period. N.C. GEN. STAT. § 97-29.
2. Plaintiff is entitled to compensation at the rate of $117.84 per week for a period of 15 weeks for the five percent permanent partial disability he has sustained to his back as a result of said injury. N.C. GEN. STAT. § 97-31(23).
3. Plaintiff is entitled to have defendants provide all medical treatment arising from said injury by accident to the extent it tended to effect a cure, give relief and lesser plaintiff's disability. N.C. GEN. STAT. § 97-25.
4. Plaintiff has not sustained a material change for the worse in the cervical back condition he sustained as a result of his injury by accident on August 17, 1988. N.C. GEN. STAT. § 97-47.
5. Plaintiff has failed to establish a causal relationship between his cervical injury that occurred on August 17, 1988 and plaintiff's alleged disability since February 20, 1992. N.C. GEN. STAT. § 97-2(6); Click v. Pilot Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $117.84 per week for the period August 17-19, 1988; May 30, 1990; and from June 18 through August 6, 1990 for his temporary total disability. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay compensation to plaintiff at the rate of $117.84 per week for 15 weeks for his permanent partial disability. Said compensation has likewise accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto.
4. A reasonable attorney's fee in the amount of twenty-five percent of the compensation benefits payable herein is hereby approved for plaintiff's counsel which fee shall be deducted from the aforesaid AWARD and paid directly to counsel for plaintiff.
5. Defendants shall pay an expert witness fee in the amount of $350.00 to Dr. Derian.
6. Defendants shall pay the costs.
FOR THE FULL COMMISSION
 S/ _____________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ____________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ____________________________ J. RANDOLPH WARD COMMISSIONER
CMV/cnp/mj 6/7/96